UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. FARRUKH AIJAZ<br>Plaintiff,<br><br>v.<br><br>1. HCC LIFE INSURANCE<br>COMPANY, d/b/a HealtheMed,<br>d/b/a HCC Medical Insurance Services,<br>a foreign corporation,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CIV-16-1052-F |

## COMPLAINT

Plaintiff, Farrukh Aijaz, by and through undersigned counsel, and for his Complaint against Defendant, HCC Medical Insurance Services [hereinafter "Defendant" or "HCC"], alleges and states as follows:

### JURISDICTION AND VENUE

1. Plaintiff is a resident of Oklahoma County, State of Oklahoma.

2. Defendant is a corporation, incorporated in the under the laws of the State of Indiana, with headquarters in Georgia, and doing business in the State of Oklahoma.

3. Defendant is engaged in the business of insurance and is subject to Oklahoma statutes, regulations, and law while involved and engaged in the business of insurance.

4. Plaintiff purchased a certain health insurance plan from Defendant, effective May 26, 2014, Member ID: OKHS318940.

5. This is an action arising out of Defendant's breach of said health insurance contract, and Defendant's violation of Oklahoma's insurance claim handling and unfair trade practice statutes.

6. Complete diversity of citizenship exists between the parties to this action, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs, conferring diversity jurisdiction on this Court pursuant to 28 U.S.C. §1332.

7. The wrongful acts and omissions giving rise to the claims asserted herein occurred in Oklahoma County, State of Oklahoma, which is within the federal judicial district for the Western District of Oklahoma. Therefore, venue is proper in this Court pursuant to 28 U.S.C. §1391.

## COMMON ALLEGATIONS

8. Effective May 26, 2014, Plaintiff purchased a health insurance policy from Defendant, with Member ID: OKHS318940. Ex. 1: HealtheMed, May 26, 2014.

9. The policy is a contract between Plaintiff and Defendant, whereby Defendant agrees to pay health insurance benefits for Plaintiff's medical care.

10. At all material times, premiums were paid by Plaintiff for his insurance coverage under the Policy with Defendant, and the Policy was in full force and effect.

11. Plaintiff's payments to HCC for his policy were via direct withdrawals from Plaintiff's bank account. The following withdrawals were made to pay the insurance premiums to HCC:

    a. May 27, 2014    $220.78

    b. July 3, 2014        $124.16

    c. July 3, 2014        $51.00

    d. July 3, 2014        $20.62

    e. July 29, 2014      $124.16

    f. July 29, 2014      $20.62

    g. August 4, 2014     $51.00

    h. August 27, 2014   $124.16

    i. September 2, 2014  $20.62

    j. September 29, 2014 $124.16

    k. September 30, 2014 $20.62

    l. October 28, 2014    $124.16

    m. October 29, 2014   $20.62

    n. December 1, 2014   $20.62

    o. December 2, 2014   $115.70

    p. December 11, 2014 $20.62

Ex. 2: Chase bank statements.

12. At all material times, Plaintiff complied with the Policy conditions.

13. On September 30, 2014, Plaintiff was involved in a motor vehicle crash in Norman, Oklahoma.

14. As a result of that crash, Plaintiff sustained serious injuries, including a right fibular fracture, right metatarsal fractures, and lacerations and abrasions.

15. Plaintiff sought medical treatment for these injuries, in which Plaintiff's medical bills exceeded $123,200.00.

16. Plaintiff's medical providers from the injuries sustained in the car crash promptly submitted bills for services to Defendant.

17. On October 4, 2014, Defendant sent Plaintiff a letter stating that per the policy, medical treatment was pre-certified from October 3, 2014 to October 17, 2014. Ex. 3: Letter to Farrukh Aijaz from HCC, Oct. 4, 2014.

> Dear Member,
>
> HCC Life Insurance Company has received a request to pre-certify your medical procedure and/or inpatient services ("Medical Services"). This letter serves as notice to you regarding the results of our review to determine if the Medical Services are medically necessary, as defined in your Certificate of Insurance ("Certificate"). Based on our review, we have determined the Medical Services to be rendered on the following dates are medically necessary and thus, pre-certified:
>
> Effective Date: October 03, 2014
> Termination Date: October 17, 2014

18. On October 16, 2014, Plaintiff's counsel notified Defendant regarding any subrogation interest that Defendant may have and requesting a breakdown of said subrogation amount. Ex. 4: Fax to HCC Medical Insurance Services from Jake S. Aldridge, Oct. 16, 2014.

19. On November 20, 2014, Defendant sent Plaintiff a form requesting Plaintiff's statement, including Plaintiff's basic information and how Plaintiff sustained injuries. Ex. 5: Letter to Farrukh Aijaz from HCC, Nov. 20, 2014.

20. On December 22, 2014, Bryan Davenport, attorney for Defendant, sent Plaintiff's counsel a letter stating that Defendant may pay for certain health expenses for Plaintiff, and that Defendant has a right to subrogation. Mr.

Davenport also expressed that he was happy to discuss the matter at any time and provide any information that was needed. Ex. 6: Letter to Jake Aldridge from Bryan Davenport, Dec. 22, 2014.

> Dear Mr. Aldridge;
>
> We represent HCC Medical Insurance Services. HCC Medical Insurance Services provides health insurance to Farrukh Aijaz. I understand that you represent Farrukh Aijaz for a personal injury that occurred on 9/30/2014. As a result of said personal injury, HCC Medical Insurance Services may pay for certain health expenses of Farrukh Aijaz. Please provide us with the status of this case at your earliest convenience.
>
> HCC Medical Insurance Services policy has a provision that requires Farrukh Aijaz to reimburse HCC Medical Insurance Services in the event that Farrukh Aijaz receives any settlement from any person or their insurer related to the 9/30/2014 personal injury. Please consider this letter as your notice of HCC Medical Insurance Services's rights.
>
> I will be happy to discuss this matter with you at any time. I will also provide you with any information that you request.
>
> I would greatly appreciate it if you could provide me with a complete copy of the police report for this motor vehicle accident. If you do not have a copy of the police report, please provide me with the exact date of the accident as well as the exact location of where the accident took place.
>
> Thank you for your cooperation in this matter. I look forward to hearing from you.
>
> Very Truly Yours,
>
> *Bryan Davenport* / sb
> Law Office of Bryan B. Davenport, P.C.
> Bryan Davenport, Attorney

21. On March 17, 2015, Plaintiff submitted the Defendant's requested form "Claimant's Statement and Authorization" along with the police report from the car crash. Ex. 7: Letter to HCC from Jake Aldridge, March 17, 2015.

22. On July 22, 2015, Bryan Davenport, attorney for Defendant, sent Plaintiff's counsel a letter stating that Defendant would not provide coverage for the September 30, 2014 car crash, with the reason that "[Plaintiff] was not eligible

under the policy at the time of this accident." Ex. 8: Letter to Jacob Aldridge from Bryan Davenport, July 22, 2015.

> Dear Mr. Aldridge;
>
> Please be advised that our client, HCC Medical Insurance Services, will not be paying claims for Farrukh Aijaz due to the 9/30/2014 MVA. Farrukh Aijaz was not eligible under the policy at the time of this accident. We have closed our file. Please contact us with any questions.
>
> Very Truly Yours,
>
> *Bryan Davenport* / sb
> Law Office of Bryan B. Davenport, P.C.
> Bryan Davenport, Attorney

23. On August 3, 2015, after an attempt to contact Mr. Davenport via telephone, Mr. Aldridge sent Mr. Davenport a letter requesting HCC's position that Plaintiff was not eligible under his health insurance policy for his injuries and treatment sustained from his car crash of September 30, 2014. Ex. 9: Fax to Bryan Davenport from Jake Aldridge, Aug. 3, 2015.

24. On August 10, 2015, Pat Petty from Jake Aldridge's office contacted via telephone Mr. Davenport regarding the status of Plaintiff's claim. Mr. Davenport said he would look into the claim and get back with Mr. Aldridge's office.

25. On August 11, 2015, Ms. Petty sent Mr. Davenport a letter outlining their telephone conversation wherein HCC respond by August 30, 2015 to the many requests that HCC explain why Plaintiff was not eligible under his policy at the time of the underlying car wreck. Ex. 10: Fax to Bryan Davenport from Pat Petty, Aug. 11, 2015.

Dear Mr. Davenport:

This letter is being sent as a follow up to our conversation yesterday. It is my understanding based upon that conversation that you are going to check with your client HCC Insurance to determine the reasoning for their denial of our client's claims related to treatment from 9-30-14 to 11-25-14. As our client has been waiting for a resolution of these claims for almost 1 year, we would ask that you respond in writing to our request by August 30, 2015.

To be clear, our client believes his policy was in effect at the time those treatments were undertaken. In fact, he had been in contact with HCC on numerous occasions over the last year and not once did they ever mention that the coverage was not in place. In those conversations they not only acted as if the policy was in place, but also asked for additional information each time to justify/complete their evaluation.

It just seems that now that they have everything they need they are deciding to deny because they don't want to pay the claims.

We look forward to your prompt response to this request.

Sincerely,

PAT PETTY

26. On August 17, 2015, Mr. Davenport sent a letter to Mr. Aldridge, requesting a HIPPA form to be signed by Plaintiff before HCC could "finalize this case." Ex. 11: Fax to Jacob Aldridge from Bryan Davenport, Aug. 17, 2015.

27. On August 21, 2015, Mr. Aldridge responded to Mr. Davenport's request for a HIPPA form, stating that a HIPPA would be supplied, and requesting again HCC's position that the policy was not in effect at the time of the car crash. Ex. 12: Fax to Bryan Davenport from Jake Aldridge, Aug. 21, 2015

Dear Mr. Davenport:

I am in receipt of your letter dated August 17, 2015, in which you requested my client provide another signed HIPPA for your client. Am I to take this as your client is no longer denying my client's policy was in effect at the time of the accident?

With that said, I will have my client sign the HIPPA and I will get that back to you as soon as possible. However, it should be noted that at the request of your client we had previously collected all the records from that facility and were in the process of preparing to send them to your client when we received your denial of coverage letter last month.

If you have any questions or if I can be of any further assistance please do not hesitate to contact me. I look forward to speaking with you in the near future.

Sincerely,

Jake S. Aldridge
Attorney at Law

28. On August 28, 2015, Mr. Aldridge complied with Mr. Davenport's HIPPA request, further stating that HCC had everything to evaluate this claim and there was no reason for further delay. Ex. 13: Fax to Bryan Davenport from Jake Aldridge, Aug. 28, 2015.

Dear Mr. Davenport:

Enclosed, please find a copy of the sign HIPPA release you requested. In an effort to provide HCC with any and all information they deem relevant to evaluate my client/their insured's claim, I have not limited the scope of that release. With that said, there should be no question that HCC now has or has the ability to obtain any and all medical records necessary to complete their eleven month evaluation.

As there is now nothing else that HCC requires to evaluate this claim, their insured would ask that they complete their evaluation promptly and notify him in writing of their decision to pay the applicable claims under the terms of the policy.

If you have any questions or if I can be of any further assistance please do not hesitate to contact me.

Sincerely,

Jake S. Aldridge
Attorney at Law

29. On September 8, 2015, Mr. Aldridge sent Plaintiff's medical records from Mercy Pain Management to Mr. Davenport. Ex. 14: Letter to Bryan Davenport from Jake Aldridge, Sept. 8, 2015.

Dear Mr. Davenport:

Enclosed, please find a complete copy of the requested medical records from Mercy Pain Management. We are sending these records in an effort to provide HCC with any and all information they deem relevant to evaluate my client/their insured's claim. With that said, there should be no question that HCC now has everything they need to complete their eleven month evaluation.

Their insured would ask that they acknowledge receipt of these records and advise as to the anticipated timeline for their completion of their evaluation.

If you have any questions or if I can be of any further assistance please do not hesitate to contact me.

Sincerely,

Jake S. Aldridge
Attorney at Law

30. On October 12, 2015, after several messages and letters went unanswered, Mr. Aldridge sent Mr. Davenport another letter inquiring as to the status of Plaintiff's outstanding medical bills. Ex. 15: Letter to Bryan Davenport from Jake Aldridge, Oct. 12, 2015.

Dear Mr. Davenport:

I have called and left you serval messages regarding my client's claims and have yet to receive a call back. As you are aware, HCC has previously denied my client's claims without any explanation or justification. It has now been over a year since the dates of service and my client is still left responsible for the debts on these bills. As the time continues to pass, the providers have now started contacting him for payment of those bills. You received the requested medical bills I sent via certified mail on September 14, 2015 and we have yet to hear anything from you or HCC regarding their position. Can you please update me as to where HCC is on their decision concerning processing and payment of the medical bills. There is no question that Mr. Aijaz was an insured under the policy and should receive the full benefit of his coverage. Should we not receive a response from you and HCC on this matter in the near future we will be forced to seek alternative means of resolution.

If you have any questions or if I can be of any further assistance please do not hesitate to contact me.

Sincerely,

Jake S. Aldridge
Attorney at Law

31.     On October 22, 2015, after many more attempts to contact Mr. Davenport and HCC, Mr. Aldridge sent another letter to Mr. Davenport in order to resolve the issue with Plaintiff's medical bills and HCC's failure to pay said medical bills from Plaintiff's car wreck case. Ex. 16: Fax to Bryan Davenport from Jake Aldridge, Oct. 22, 2015.

32.     On October 26, 2015, HCC contacted Plaintiff via telephone, telling Plaintiff that his policy was canceled due to "pre-existing conditions" and that HCC was attempting to refund the premiums that Plaintiff paid.

33.     On October 26, 2015, Mr. Aldridge sent Mr. Davenport a letter inquiring as to why HCC has never responded in the prior thirteen months that HCC had terminated Plaintiff's health insurance coverage, although premiums were paid and accepted by HCC. Ex. 17: Fax to Bryan Davenport from Jake Aldridge, Oct. 26, 2015.

34.     On October 30, 2015, Mr. Davenport and Mr. Aldridge spoke via telephone, in which Mr. Davenport was going to follow up with his client HCC to try to resolve this claim, look into the billing amounts, and forward the cancellation letter to Mr. Aldridge. Ex. 18: Fax to Bryan Davenport from Jake Aldridge, Nov. 2, 2015.

Dear Mr. Davenport:

This letter is being sent as a follow up to the telephone conversation we had last Friday, October 30, 2015. I wanted to make sure to confirm my understanding of the steps that were to be taken in order to move this claim towards a beneficial resolution for all parties.

With that said, it is my understanding that you were going to personally follow up with your client, HCC, to discuss possible avenues of resolution. Additionally, you were going to obtain a dry run of the billing submissions so that we can determine if in fact it is in my client's best interest to submit the bills for processing. Further, you were going to forward me a copy of the cancelation letter your client had sent to you and my client. Lastly, you informed that you would be in touch in the near future to let me know what you had learned so that we could attempt to get this matter resolved without the need to proceed into litigation.

As I said on Friday, it is my sincere hope that we can resolve this matter in a timely fashion so as to protect our clients from potential bad faith litigation. If there is anything I can do to assist in the prompt resolution of this matter please do not hesitate to contact me.

I look forward to your response to the above listed items and look forward to speaking with you again in the near future.

Sincerely,



Jake S. Aldridge
Attorney at Law

35. On November 12, 2015, after two weeks had passed since Mr. Davenport promised to follow up with HCC on this claim, Mr. Aldridge sent another letter to Mr. Davenport requesting the status of the claim. Ex. 19: Fax to Bryan Davenport from Jake Aldridge, Nov. 12, 2015.

36. On November 30, 2015, after thirty days of no response from Mr. Davenport or HCC, Mr. Aldridge sent another letter to Mr. Davenport requesting the status of the claim. Ex. 20: Fax to Bryan Davenport from Jake Aldridge, Nov. 30, 2015.

37. To date, HCC nor Mr. Davenport have responded to the numerous letters and requests as outlined above.

38. Since HCC refused to honor the policy, Plaintiff had to pay the medical bills, spending $66,812.33 out of his own pocket.

## FIRST CAUSE OF ACTION: BREACH OF CONTRACT

For his first cause of action, Plaintiff re-alleges and incorporates by reference the foregoing paragraphs and states:

39. At all material times to this action and in exchange for a valuable premium, HCC provided health insurance to Plaintiff under the policy, which is a binding and enforceable insurance contract under Oklahoma law.

40. Plaintiff's medical conditions are covered under the policy, and HCC erred in not fully indemnifying Plaintiff in relation to same.

41. By the terms of the policy and pursuant to Oklahoma law, HCC, among other things, had a duty to properly investigate the subject medical conditions, adjust and investigate the claim, and fully indemnify Plaintiff.

42. HCC failed Plaintiff in these regards (most notably with respect to its failure to pay the benefits due and owing under the policy), which breached the policy and violated Oklahoma law.

43. As a direct, foreseeable, and proximate result of HCC's breach of its obligations under the policy, Plaintiff has suffered damages in the amount of $66,812.23.

44. Plaintiff has no other adequate remedy at law to address the injuries suffered by him as a result of HCC's denial of benefits.

WHEREFORE, Plaintiff prays for judgment against Defendant for damages in an amount of $66,912.23, plus costs, interest, punitive damages, attorney fees, and such other damages as this Court deems appropriate.

### SECOND CAUSE OF ACTION: BAD FAITH DEALING

For his first cause of action, Plaintiff re-alleges and incorporates by reference the foregoing paragraphs and states:

45. HCC has a duty to deal fairly and act in good faith with the Plaintiff as required by Oklahoma law.

46. HCC is required under the insurance contract to timely and properly evaluate Plaintiff's claim; to conduct an investigation reasonably appropriate under the circumstances; to swiftly and promptly pay for the value or within the range of value assigned to the claim; to timely and properly pay undisputed amounts; and abstain from the use of "lowball" negotiation tactics while occupying a superior negotiating position.

47. Despite and considering the above and foregoing, HCC failed to deal fairly and act in good faith with the Plaintiff in accordance with the terms and conditions of the insurance contract by engaging in the following acts and omissions:

    a. HCC failed to provide coverage for Plaintiff's medical bills sustained in a car crash despite the policy being in effect, premiums fully paid, and precertification of the treatment.

48. The violation by HCC of its duty of good faith and fair dealing is the direct cause of the injuries and damages sustained by Plaintiff.

49. That as a direct cause of HCC"'s bad faith conduct, Plaintiff has suffered financial losses, embarrassment and loss of reputation, physical pain and suffering, and mental pain and suffering.

50. That HCC's conduct was wrongful, intentional, willful, malicious and in reckless disregard to the rights of Plaintiff. Furthermore, HCC's intentional, willful, malicious and/or reckless conduct was sufficiently egregious so as to warrant imposition of punitive damages.

51. That HCC has enjoyed the increased financial benefit and has been unjustly enriched as a direct result of the wrongful, intentional, willful, malicious and/or reckless conduct described above.

WHEREFORE, the Plaintiff prays for judgment against the Defendant, for an amount in excess of $75,000.00, plus cost, interest, attorney fees, punitive damages and all such other and further relief for which the Plaintiff may be entitled.

## PUNITIVE DAMAGES

52. Due to the Defendant's wrongful, intentional, willful, malicious and/or reckless conduct as described above, Plaintiff is entitled to punitive damages.

WHEREFORE, the Plaintiff prays for judgment against the Defendant, for an amount in excess of $75,000.00, plus cost, interest, attorney fees, punitive damages and all such other and further relief for which the Plaintiff may be entitled.

Respectfully submitted,

FOSHEE & YAFFE

s/Eric J. Cavett
JAKE S. ALDRIDGE, OBA#21932
ERIC J. CAVETT, OBA#22098
P.O. Box 890420
Oklahoma City, OK 73189
Telephone: (405) 378-3033
Facsimile: (405) 632-3036
jakealdridge@fylaw.com
ejc@fylaw.com
**ATTORNEYS FOR PLAINTIFF**

Attorney Lien Claimed
**JURY TRIAL DEMANDED**